UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KAREN SCRUGGS,

    Plaintiff,

  v.

KIRSTJEN NIELSEN, et al.,

    Defendants.

No. 18 CV 2109

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

TSA agents searched and detained plaintiff Karen Scruggs at the airport. Scruggs, an African American woman, brings claims against the unknown TSA agents, Kathleen Petrowsky (the airport's Federal Security Director), the Secretary of the Department of Homeland Security, and the United States, alleging constitutional violations and claims under the Administrative Procedure Act and the Federal Tort Claims Act. The government (the United States and the DHS Secretary) and Petrowsky (in her individual capacity) move to dismiss the complaint.[1] For the reasons explained below, Petrowsky's motion is granted, and the government's motion is granted in part, denied in part.

**I.    Legal Standards**

The government moves to dismiss the complaint under Rule 12(b)(1), and all defendants move to dismiss it under Rule 12(b)(6). To survive the former motion, the complaint must plausibly allege standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173–

---

[1] The unknown TSA agents have not been served.

74 (7th Cir. 2015). To survive the latter, the complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving both motions, I consider only the pleadings, documents incorporated by reference in the pleadings, and matters subject to judicial notice, accepting the well-pleaded facts as true and drawing all reasonable inferences in Scruggs's favor. *Tobey v. Chibucos*, 890 F.3d 634, 639, 648 (7th Cir. 2018); *Silha*, 807 F.3d at 173.[2]

## II. Facts

Karen Scruggs is an African American woman who was on her way to catch a plane to Fort Lauderdale at O'Hare International Airport. [1] ¶¶ 1–2.[3] At the security checkpoint, Scruggs went through a full-body scanner, and then TSA agents[4] took her aside and patted down her hair, with no explanation. [1] ¶¶ 3–5. Scruggs had been through these hair pat-downs in airport security before. [1] ¶ 18. The agents next performed a chemical scan. [1] ¶ 6. Afterwards, a TSA agent took Scruggs to a nearby room, where agents asked her harassing questions, refused to answer her questions, and made her believe that Chicago police officers were coming to arrest

---

[2] The government does not submit any evidence in support of its Rule 12(b)(1) motion, so I assume it is a facial challenge to jurisdiction. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("In the context of facial challenges … the court does not look beyond the allegations in the complaint.").

[3] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. Facts are taken from the complaint, [1].

[4] The complaint interchangeably uses the labels "agent," "officer," and "official" to describe the TSA employees who interacted with Scruggs. *See, e.g.*, [1] ¶¶ 7–9. I will use the more inclusive term "agent" to describe them, since, as we will see, "officer" has special meaning for the FTCA claim.

her. [1] ¶¶ 7, 45–46. The TSA agents would not let Scruggs leave and kept her in the room for some time before eventually letting her go. [1] ¶¶ 10–12. No one ever told Scruggs why she had been detained. [1] ¶ 13. There is no allegation that Scruggs missed her flight. On Scruggs's way home from Fort Lauderdale, a TSA agent again performed an unexplained pat-down of her hair. [1] ¶¶ 14–17. The TSA agents had no reason to believe that Scruggs posed a safety threat during these interactions. [1] ¶ 19.

### III. Analysis

#### A. Administrative Procedure Act

The APA provides that a "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704. The government characterizes the APA's "final agency action" requirement as a jurisdictional one, but § 704 is not jurisdictional. *See Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017). *See also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010).

The complaint does not allege a final agency action. Scruggs argues that the final agency action at issue is the "detention and interrogation" of Scruggs, but "agency action" is a defined term, not just any action taken by an agency. The APA defines an "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. §§ 701(b)(2), 551(13), and the TSA agents' alleged conduct toward Scruggs is none of those. Nor does the conduct meet the finality requirements. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (explaining that to be final, the agency action must "mark the

consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow" (cleaned up)). Scruggs has not stated an APA claim.

Even if Scruggs had adequately alleged a final agency action, this court would likely have lacked jurisdiction over the claim. The court of appeals has exclusive jurisdiction over the review of a TSA "order," 49 U.S.C. § 46110, and courts have interpreted "order" to have a similar meaning to "final agency action" under the APA. *See Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006) ("'Order' carries a note of finality, and applies to any agency decision which imposes an obligation, denies a right, or fixes some legal relationship." (citation omitted)). As a result, the daylight between the two (if any) is narrow, and most (if not all) APA claims seeking review of the TSA's final actions must be brought in the court of appeals. *See, e.g., Promptair, Inc. v. Hinson*, No. 96 C 6282, 1996 WL 680005, at *5 (N.D. Ill. Nov. 21, 1996) ("[T]here is no gap between the courts' of appeals jurisdiction over FAA orders, and the district courts' general jurisdiction over agency orders.").

Here, it is not clear from the complaint that Scruggs is challenging a TSA final order. The government contends that the TSA's screening procedures are governed by a document called the Checkpoint Screening Standard Operating Procedures, which it argues is a final order reviewable only by the court of appeals, but the government has not submitted evidence about what the SOP says or if the TSA agents were acting according to it when they searched Scruggs.[5] Scruggs may have no issue

---

[5] The SOP is a confidential document that is not publicly available. *See Blitz v. Napolitano*, 700 F.3d 733, 736 (4th Cir. 2012). But in many of the cases that the government cites, there

4

with the SOP itself but rather challenge how defendants chose to apply it to her or their failure to comply with its mandates. Based only on the pleadings, I cannot conclude whether Scruggs's complaint challenges the SOP or whether her claims are inescapably intertwined with such a challenge. *See Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) (Section 46110 "also preclude[s] district courts from hearing claims that are 'inescapably intertwined' with review of such orders."). But if Scruggs attempts to replead her APA claim, she should identify the specific final agency action at issue, so that jurisdiction can be determined.

B.   **Federal Tort Claims Act**

Scruggs brings claims against the United States for the torts of false arrest and false imprisonment. The United States is immune from suit unless it consents to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Through the FTCA, the United States has waived its sovereign immunity with respect to its employees' torts, with some exceptions. 28 U.S.C. § 1346(b)(1). One of those exceptions covers certain intentional torts, including those that Scruggs claims here. 28 U.S.C. § 2680(h). The government argues that the intentional-tort exception bars Scruggs's FTCA claims.[6] But Scruggs invokes the "law-enforcement proviso"—an exception to

---

was at least a declaration generally explaining the SOP's contents as they related to the complaint's allegations. *See id.*; *Redfern v. Napolitano*, No. CIV.A. 10-12048-DJC, 2011 WL 1750445, at *1 (D. Mass. May 9, 2011), *vacated and remanded on other grounds*, 727 F.3d 77 (1st Cir. 2013); *Roberts v. Napolitano*, 798 F.Supp.2d 7, 9 (D.D.C. 2011), *aff'd*, 463 Fed.App'x 4 (D.C. Cir. 2012); *Green v. Transportation Sec. Admin.*, 351 F.Supp.2d 1119, 1121 (W.D. Wash. 2005). The government has not submitted such a declaration here.

[6] Sovereign immunity is a waivable defense, not a jurisdictional bar. *See Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016); *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) ("[W]hat sovereign immunity means is that relief against the United States depends on a statute; the question is not the competence of the court to render

5

the exception under which the United States waives immunity for intentional torts committed by "investigative or law enforcement officers." *Id*. "Investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*. So, the question is whether the TSA agents are "investigative or law enforcement officers."

The TSA agents who carry out the TSA's duty to screen "all passengers and property … that will be carried aboard a passenger aircraft," 49 U.S.C. § 44901(a), are called Transportation Security Officers. *See* [14] at 16. The TSA Administrator is also authorized to designate employees to be "law enforcement officers," which gives them the authority to carry firearms, make arrests, and seek and execute warrants. 49 U.S.C. § 114(p). It appears to be undisputed that the latter category of TSA agent is an "investigative or law enforcement officer" within the meaning of the proviso.[7] The dispute is instead over TSOs and whether they are officers who are "empowered by law to execute searches … for violations of Federal law." *See Bunch v. United States*, 880 F.3d 938, 944 (7th Cir. 2018) ("[S]ection 2680(h) refers to both investigative *and* law-enforcement officers, and it defines both types of officer as a

---

a binding judgment, but the propriety of interpreting a given statute to allow particular relief.").

[7] To the extent the government argues that even a designated TSA law-enforcement officer would not fall within the proviso's scope if she were on screener duty at a checkpoint, that argument fails. *See Millbrook v. United States*, 569 U.S. 50, 57 (2013) ("[T]he waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest.").

6

person with legal authority to 'execute searches, to seize evidence, *or* to make arrests.' Any one of those three powers will do." (emphasis in original) (citation omitted)).

As the government points out, most courts that have addressed the issue have found that TSOs do not fall within the scope of the law-enforcement proviso. *See, e.g.*, *Corbett v. Transportation Sec. Admin.*, 568 Fed.App'x 690, 701 (11th Cir. 2014); *Hernandez v. United States*, 34 F.Supp.3d 1168, 1182 (D. Colo. 2014); *Walcott v. United States*, No. 13-CV-3303, 2013 WL 5708044, at *2 (E.D.N.Y. Oct. 18, 2013); *Weinraub v. United States*, 927 F.Supp.2d 258, 266 (E.D.N.C. 2012). A panel of the Third Circuit held that the law-enforcement proviso "refers only to officers with criminal law enforcement powers" and so does not apply to TSOs who "only conduct administrative searches and do not have such powers." *Pellegrino v. United States Transportation Sec. Admin., Div. of Dep't of Homeland Sec.*, 896 F.3d 207, 216 (3d Cir. 2018). But the court vacated the opinion and re-heard the case en banc, and it has yet to issue an opinion. *Pellegrino v. United States of Am. Transportation Sec. Admin.*, 904 F.3d 329 (3d Cir. 2018). Scruggs refers to *Armato v. Doe 1*, No. CV-11-02462-PHX-ROS, 2012 WL 13027047 (D. Ariz. May 15, 2012), where the court found that airport screenings are statutorily-authorized searches, so TSOs fall within the proviso's scope.

The question is premature and inadequately developed at this point in the litigation. The intentional-tort exception is an affirmative defense. *Bunch*, 880 F.3d at 941. Complaints do not have to anticipate and plead around affirmative defenses, so dismissal at this stage based on such a defense is inappropriate unless the

complaint pleads all the facts necessary to satisfy it. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The complaint alternates between describing those who searched and detained Scruggs as "agents," "officers," and "officials," and none of those labels establishes the title or authority of the alleged tortfeasors. The agents could have been designated law-enforcement officers (in which case the proviso would apply and immunity would be waived) or they could have been TSOs. So even if I were to now conclude that TSOs are not "investigative or law enforcement officers" as a matter of law, the question would remain whether the TSA agents who interacted with Scruggs were TSOs, and this factual question precludes dismissal.

## C. Constitutional Claims

Scruggs brings claims based on the violation of her Fourth and Fifth Amendment rights against the government and its officials for injunctive relief and declaratory relief and against Petrowsky (and unknown TSA agents) for damages.

### 1. *Equitable Relief*

One of Article III's jurisdictional requirements is an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). *See also Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) ("[T]he Supreme Court has made clear that in order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of

8

sustaining some direct injury."). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (citation omitted).

Scruggs does not adequately allege that she has concrete plans to fly again or that when she does, she will again suffer the constitutional violations alleged in the complaint. Scruggs says that "she will fly," [25] at 25, but that fact is not alleged in the complaint, nor is it accompanied by an explanation of when. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of [an] 'actual or imminent' injury." *Lujan*, 504 U.S. at 564 (emphasis in original). And the complaint's allegations about the risk of future injury if she does fly again are too speculative. *See* [1] ¶ 22 (hair pat-downs are "widespread and continuing"); ¶ 53 ("unwarranted hair pat downs and arrest and detentions of African Americans continue to this date"); ¶ 55 (without court intervention, "it is likely that Ms. Scruggs … will again be subjected to unconstitutional searches and seizures by TSA agents"). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (plaintiff lacked standing for prospective equitable relief against the use of chokeholds by police officers absent a threat of deadly force even where he alleged that the police "routinely" used chokeholds under those circumstances). Nor does the claim that "each day" other African American travelers are subjected to discrimination in the screening process establish Scruggs's standing to seek injunctive relief. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("The

9

Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party.").

Because Scruggs has not alleged a "real and immediate" threat of future harm, she lacks standing to pursue equitable relief on her constitutional claims.

### 2. Damages

Scruggs seeks to recover damages from Petrowsky and others for the alleged constitutional violations based on 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Scruggs concedes that § 1983 does not apply to Petrowsky because she is a federal official, so that leaves *Bivens*.[8]

The *Bivens* remedy is an implied damages remedy for a limited group of constitutional violations. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854–57 (2017). To determine whether the *Bivens* remedy is available, courts must decide (1) whether it would be an extension of the remedy into a new context and (2) if so, whether special factors counsel hesitation. *Id.* at 1857. Scruggs's allegations against Petrowsky "bear little resemblance to the three *Bivens* claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," *id.* at 1860, all of which are claims against the officials who directly committed the constitutional violations. And

---

[8] The unknown TSA agents, as best as I can infer from Scruggs's complaint, were federal agents too, so no § 1983 claim exists against them either.

10

here, the expansion of *Bivens* would be into the national-security context, which counsels hesitation for a host of reasons. *See Vanderklok v. United States*, 868 F.3d 189, 205–09 (3d Cir. 2017) (explaining the special-factor considerations of extending *Bivens* to the TSA for First Amendment retaliation). *Bivens* is not available against Petrowsky.[9]

But even if the *Bivens* remedy were available, Petrowsky would have qualified immunity from the claim. "Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. To defeat the qualified immunity defense, a plaintiff must show: (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (citation omitted). *See also Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915–16 (7th Cir. 2015) (qualified immunity should be resolved at the earliest possible stage, which is sometimes the pleadings stage).

The complaint's only allegations about Petrowsky's conduct are that she "participated in and implemented the hair pat downs and … participated in, or knew or should have known, of the searches, arrest, and detention of Scruggs." [1] ¶ 32. *See*

---

[9] Nor is it available against the unidentified TSA agents. Although they are alleged to have directly committed the searches and seizures, the searches were in the security-screening context; no court has applied *Bivens* to these administrative, special-needs searches and it would be an extension to do so now. On top of that, the added national-security issues apply to the TSA agents just as they do to Petrowsky. Scruggs may not pursue a *Bivens* claim against the unknown TSA agents.

11

*Ziglar*, 137 S.Ct. at 1860 ("A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. The purpose of *Bivens* is to deter the *officer*. *Bivens* is not designed to hold officers responsible for acts of their subordinates." (cleaned up) (citation omitted)); *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Scruggs's conclusory allegations are not supported by facts and are insufficient to make plausible her claim that Petrowsky violated her constitutional rights.[10] *Iqbal*, 556 U.S. at 678–79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor has Scruggs pointed to any case law demonstrating that if Petrowsky did in fact implement the hair pat-down policy or know about Scruggs's search and detention that it was "beyond debate" that such actions were illegal. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Scruggs's citations to general propositions of law about unconstitutional racial discrimination are insufficient. *See Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (cautioning courts "not to define clearly established law at a high level of generality" but rather to focus on "whether the violative nature of the *particular* conduct is clearly established" (emphasis in original) (citations omitted)).[11]

---

[10] Even if Scruggs's conclusions were true, they would not be enough to establish Petrowsky's liability for an equal-protection claim. *See Iqbal*, 556 U.S. at 677 ("purpose rather than knowledge" is required to impose *Bivens* liability for unconstitutional discrimination).

[11] The unknown TSA agents are entitled to qualified immunity too. No case clearly establishes that administrative airport searches that involve suspicionless hair pat-downs and brief detentions violate the Fourth Amendment or that airport screenings with a disparate racial impact violate the Fifth Amendment.

### 3. Merits

Since Scruggs lacks standing to pursue equitable relief on her constitutional claims and a *Bivens* remedy is not available for her to pursue damages, it is not necessary for me to reach the merits of the claims. But if Scruggs seeks to amend her complaint, some discussion of the merits might be helpful to the parties.

### a. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Usually, a search must be based on "individualized suspicion of wrongdoing" to be reasonable, but there are exceptions to that rule when the government has "special needs." *Chandler v. Miller*, 520 U.S. 305, 313 (1997). Airport security is one such special-needs context, and airport screenings are "administrative searches" that do not require individualized suspicion. *See, e.g.*, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 10 (D.C. Cir. 2011); *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (en banc); *United States v. Hartwell*, 436 F.3d 174, 181 (3d Cir. 2006). *See also Chandler*, 520 U.S. at 323 ("[W]here the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable'—for example, searches now routine at airports."). But there are limits to airport screenings—they must be reasonable. *See Illinois v. Lidster*, 540 U.S. 419, 427 (2004) (judging the reasonableness of a checkpoint search by looking to "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty" (citation omitted)).

13

The complaint does not plausibly allege that the search and detention of Scruggs was unreasonable. The factual allegations instead demonstrate that the search and seizure were minimally invasive. Nothing about the allegations suggests that the hair pat-downs were unreasonably intrusive or invasive of privacy, and they caused no meaningful delay in Scruggs's travel. Though an unreasonably long detention could be unconstitutional, *see George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013), Scruggs does not allege how long she was detained and her conclusory allegation that the detention was "unreasonably" long, [1] ¶ 10, need not be accepted as true. The absence of any allegation of a harmful delay suggests that the detention was brief and merely inconvenient (albeit conducted by rude TSA agents)—a not unreasonable occurrence at an airport. Scruggs's allegation that the TSA agents had no grounds for suspicion (which often justify secondary screenings) may suggest that the secondary search and seizure did not greatly advance the public interest, but that is not enough to make the mild intrusion to Scruggs's liberty unreasonable in the face of the indisputably grave and important interests served by airport screenings.

To the extent Scruggs challenges the reasonableness of her search and seizure on the grounds that she was singled out because of her race, that argument does not implicate the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.").

b. Fifth Amendment

The Fifth Amendment "prohibit[s] the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976).[12] The government argues that Scruggs has not plausibly alleged discriminatory intent, an essential element of an equal-protection claim. *See Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017). Scruggs responds by saying that "she, along with other African Americans were treated differently because of their natural hair" and that Scruggs "is being discriminated against because of her hair" since "TSA does not perform these searches on persons with straight hair." [25] at 21. But people with certain hairstyles are not a protected class.

Perhaps Scruggs meant to make a disparate impact argument—the TSA targets people with a certain kind of hair, and African American people are the ones with that kind of hair. But if the TSA only means to target the type of hair and the disproportionate racial impact is unintentional, the practice does not violate the Equal Protection Clause. *See Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 653 (7th Cir. 2001) ("[O]nly *deliberate* discrimination is actionable under the equal protection clause." (emphasis in original)). On the other hand, if the TSA intended to discriminate against African American people and decided to implement hair pat-downs as a pretext to do so (believing that the type of hair serves as a proxy

---

[12] The complaint also refers to the Fourteenth Amendment, but that does not apply to the federal government. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987). A Fifth Amendment equal-protection claim is approached in the same way as a Fourteenth Amendment equal-protection claim. *United States v. Nagel*, 559 F.3d 756, 760 (7th Cir. 2009)

15

for race), that would violate the Equal Protection Clause. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979). But Scruggs's theory is not apparent from her complaint, and she does not argue that her claim is one of intentional discrimination implemented by pretextual hair pat-downs.

## IV. Conclusion

Petrowsky's motion to dismiss [18] is granted. All claims against Petrowsky are dismissed with prejudice, as are the *Bivens* claims against the unknown TSA agents.[13] The government's motion to dismiss [13] is granted in part, denied in part. It is denied as to the FTCA claim, but all other claims are dismissed without prejudice.[14] Scruggs has leave to file an amended complaint by April 18, 2019. A status hearing is set for April 11, 2019 at 9:30 a.m.

ENTER:

                                                    Manish S. Shah
                                                    United States District Judge

Date: March 27, 2019

---

[13] *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend … where amendment would be futile."); *Hinnen v. Kelly*, 992 F.2d 140, 144 (7th Cir. 1993) (affirming dismissal with prejudice based on qualified immunity).

[14] "District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).