**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KAREN SCRUGGS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIRSTJEN NIELSEN, as former official capacity as )<br>Secretary of Homeland Security U.S. Department of )<br>Homeland Security Washington, DC 20528, )<br>And Transportation Security Administration (TSA), and )<br>UNITED STATES OF AMERICA, )<br>)<br>Defendants. ) | No. 18 CV 2109<br><br><br>Judge Manish S. Shah Martin |

**AMENDED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF**

NOW COMES, Plaintiff, KAREN SCRUGGS, by and through her attorneys, LAW OFFICE OF MARTIN L. GLINK AND BAUMANN & SHULDINER, and complains against KIRSTJEN NIELSEN, formerly in her official capacity as Secretary of Homeland Security U.S. Department of Homeland Security (DHS) Washington, DC 20528, TSA, and UNITED STATES OF AMERICA, as follows:

1. On March 26, 2016 on or about 5:30 p.m., Plaintiff, Karen Scruggs, an African American female, was going through security at O'Hare Airport, in Chicago, Illinois.

2. Ms. Scruggs was on her way to catch a 6:46 p.m. American Airline Flight, #1483 to Ft. Lauderdale.

3. At security checkpoint, Ms. Scruggs went through a full body scanner without any alarm going off.

4. After she went through the scanner, Transportation Security Administration ("TSA") agents/officers (herein referred to as "officials") pulled her over and patted down her hair.

1

5. At no time, did any TSA official advise her that the body scanner had found anything suspicious in her hair or explain why they needed to go through her hair.

6. Thereafter, TSA performed a chemical scan, which was negative.

7. After the chemical scan, and without advising her why, TSA officials seized Ms. Scruggs, subjected her to a harassing interrogation, and unlawfully detained her in a room.

8. In this room, without her consent and without any cause, a TSA official conducted a full body search.

9. When asked why she was being searched and inappropriately touched without consent, a TSA official ordered her to shut up and that she should not ask any questions since she was in a lot of trouble, that she probably would not make her flight, and that she should worry more about when the police show up.

10. The TSA official would not allow Ms. Scruggs to leave the room and kept her there for approximately 30-45 minutes.

11. Eventually, an older African-American TSA male official came in. He asked the female TSA official present if Ms. Scruggs and her possessions had been searched, to which the female TSA official stated yes.

12. Thereafter, Ms. Scruggs was released from custody and had to rush to her gate.

13. At no time did TSA advise her why she was had been searched, arrested, and detained.

14. On March 29, 2016 at approximately 5:30 a.m., Ms. Scruggs was returning back from Ft. Lauderdale Airport to Chicago, on American Airlines, 6:15 a.m. Flight AA354.

15. Again, after going through the body scanner which did not set of an alarm, she was pulled out of the line by a TSA official.

16. The TSA official again patted down her hair.

17. The TSA official did not explain why.

18. TSA had subjected Ms. Scruggs to these hair pat downs on prior occasions.

19. These extensive intrusions into Ms. Scruggs' liberty occurred even though TSA officials had absolutely no reason to believe that she posed a safety threat and no reasonable suspicion that illegal activity was afoot.

20. Ms. Scruggs, who has friends throughout the United States and who enjoys going to different parts of the Country at least once a year, has flown since the instances complained of and has suffered emotional distress, fear and anxiety when going through the TSA check points, believing that she will be detained and arrested again simply because she is African American and because of her natural hair, and subject to searches that other individuals who are not African American and who do not have such hair are not subject to.

21. Ms. Scruggs fears that she will continue to suffer these unreasonable and disparate searches and detentions each time she flies in the future.

22. Each time she has flown since, she has had to make a concerted decision how to wear her hair so to avoid having to undergo a hair pat down or be singled out for more intrusive searches, simply because of her being African American which includes her natural hair.

23. Thus, Ms. Scruggs has a continuing harm in that when she flies she has to either conform to how non-African Americans wear their hair or suffer the additional search. The other option to avoid such pat downs would be for her not fly, which also is a continuing harm.

24. As the detention and interrogation of Ms. Scruggs made clear, the safety of civil aviation did not motivate TSA's conduct. Instead, TSA officials believed they had authority to conduct a freewheeling investigation. Neither the scan nor chemical swab was positive, therefore,

there was absolutely no reason for the additional hair pat down and intense interrogations and full body search.

25. On October 11, 2018, TSA issued a blog which indicated that a hair pat down will occur if the advanced imaging technology machine is triggered by a passenger's head region.[1] It also outlined the steps that are taken before a hair pat down commences, including explaining the purpose of the hair pat down, how it will be conducted, asking the passenger for any concerns before the inspection, the ability to ask for the officer to use new gloves and speak to a supervisor and, request a private screening accompanied by a companion of the passenger's choice. Ms. Scrugg's head region did not set off any sensors and at no time was she provided with the listed options.

26. In the blog, the TSA states that the persons who perform the pat downs are "officers."

27. By subjecting Ms. Scruggs to unlawful searches and a prolonged and unauthorized detention, Defendants violated Plaintiff's rights under the Fourth Amendment and exceeded their statutory authority.

28. It is well established that subjecting airline passengers to limited searches designed to detect weapons and explosives is consistent with the Fourth Amendment. But it is equally clear that such search authority constitutes a narrow exception to the Fourth Amendment's basic prohibition of suspicionless searches, and that authority is carefully circumscribed to serve its limited purpose. As a matter of policy or practice, however, TSA has attempted to enlarge its authority, untethering it from the pressing but limited purpose of protecting civilian aviation.

---

[1] https://www.tsa.gov/blog/2018/10/09/tsa-travel-tips-hair-products-and-pat-downs-what-know-and-what-expect

29. Plaintiff's experience was not an anomaly. Investigation has uncovered that there is a widespread and continuing practice of conducting hair pat downs on African Americans, which is not being performed on other races, and which has been occurring for years.

30. TSA's pretextual searches are a cover for TSA to fish for evidence of criminal conduct which is far removed from the agency's mandate of ensuring flight safety. Ms. Scruggs, and other African Americans who are similarly situated, face and have faced a particularly strong risk of suffering unconstitutional seizures or searches.

31. To prevent future constitutional violations, Ms. Scruggs seeks injunctive and declaratory relief to ensure that TSA's search policy does not exceed the scope permitted by the Fourth Amendment to the U.S. Constitution and authorized by Congress.

32. Ms. Scruggs, by her attorneys, now challenges the discriminatory conduct and pattern and practice of the TSA, which identified her as a "suspicious" passenger based on her ethnicity, race or national origin, resulting in her arrest and detention, as a violation of 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964; and 49 U.S.C. § 40127(a).

33. Ms. Scruggs also brings this action to challenge the unlawful arrest, detention, and search she endured at the hands the TSA, who violated her right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution. In arresting and detaining Ms. Scruggs because of her perceived ethnicity, race, or national origin, the TSA further violated Ms. Scruggs' right to equal protection of the laws under the Fifth Amendment to the United States Constitution.

34. In addition, Ms. Scruggs brings claims under the Federal Tort Claims Act against the United States of America for false arrest and false imprisonment.

**I.    PARTIES**

35.    Plaintiff, Karen Scruggs, is an African American and a resident of Barrington, Illinois and is a citizen of Illinois.

36.    Defendant Kirstjen Nielsen was Secretary of the Department of Homeland Security. The TSA is a Department of the Department of Homeland Security thus, Defendant has authority over TSA's policies and responsibility for ensuring its compliance with all legal requirements. Defendant is sued in her official capacity.

37.    Defendant United States of America ("United States") is the proper defendant for Ms. Scruggs' claims brought under the FTCA.

38.    At all times relevant, unknown TSA officials were acting within the scope of their Employment with TSA and the United State Government.

**II.    JURISDICTION AND VENUE**

39.    This civil rights action is brought pursuant to 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 49 U.S.C. § 40127(a); the Fourth and Fifth Amendments to the United States Constitution; and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. This Court has jurisdiction over Ms. Scruggs' claims as an action arising under federal law, 28 U.S.C. § 1331; as a suit to redress deprivations of rights, privileges, and immunities secured by the United States Constitution and by federal law, 28 U.S.C. § 1343(3), (4); and as an action against the United States, 28 U.S.C. § 1346.

40.    On April 28, 2016 and again on August 16, 2016, Ms. Scruggs filed a complaint for damages to the TSA. Upon the filing of this initial lawsuit, the claims were not resolved within 6 months of the presentment of the claims, and therefore this claim is timely under 28 U.S.C. § 2401(b).

41.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (e) because a

6

substantial part of the events or omissions giving rise to the claims occurred within this district. The initial event complained of herein happened as Ms. Scruggs was searched, arrested, and detained at Chicago O'Hare Airport, in Chicago, Illinois, within the Northern District of Illinois.

42. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

43. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

### III. FACTUAL ALLEGATIONS

<u>TSA's Limited Administrative Search Authority</u>

44. TSA is responsible for providing security for commercial air travel.

45. TSA is obligated by statute to provide for the screening of all passengers and property that will be carried aboard passenger aircraft operated by domestic or foreign air carriers in the United States. This obligation includes ensuring a uniform procedure for searching and detaining passengers that, in addition to promoting safety, treats passengers appropriately.

46. The search authority entrusted to TSA is not open-ended. Rather, it is circumscribed to allow suspicionless searches only to the extent that they are reasonably designed to detect weapons and explosives that may pose a threat to air safety. TSA is authorized by statute to promulgate screening regulations designed to protect passengers and property on an aircraft against an act of criminal violence or aircraft piracy.

47. TSA possesses authority under federal law to deputize local law enforcement officers to implement the passenger screening process.

48. Officers deputized by TSA are treated as federal law enforcement officers for purposes of meeting the requirements of TSA's statutory duties. They are also treated as federal

officers for purposes of assessing liability for actions undertaken pursuant to any deputation agreement with TSA.

### The Search and Detention of Plaintiff

49. As stated, a TSA official brought Ms. Scruggs to a small enclosed room near the screening area. The room was separated from the concourse by a closed door.

50. At this point, Ms. Scruggs understood that she and her belongings were being detained by the TSA. There were two female TSA officials in the room. During the pat-down in the private room, a female TSA official put her hands between Plaintiff's legs and under her bra and again through her hair, without consent. At all times, there was a TSA official outside the room refusing to let her leave. Ms. Scruggs was thereafter subjected to a series of harassing questions. During this time, she was not free to leave, and the official detained her and maintained possession of her property. At all times, she responded to the officials' questions. In response to her polite inquiry as to why she was being detained, the officials and/or TSA supervisors refused to answer Ms. Scruggs and instead threatened her by stating that she might miss her plane and that the Chicago Police was coming to arrest her and take her from the airport.

51. At no time, did the TSA-led interrogation team inform Plaintiff of her legal rights and obligations as required, and instead repeatedly berated her and threatened that she would miss her plane and be going to jail.

### TSA's Practice of Conducting Hair Pat Downs and Searches

52. The treatment Ms. Scruggs received reflects TSA policy and/or practice.

53. On December 9, 2013 Malaika Singeleton was subject to an unreasonable and racially discriminatory hair pat down search at both Los Angeles International Airport and Minneapolis International Airport after going through a full body scanner.

54. This was similar to another incident that occurred in 2012 to Solange Knowles who was going through Miami airport.

55. On April 3, 2014, the ACLU filed an administrative complaint with the TSA to challenge TSA's discriminatory hair searches.

56. On January 12, 2015, TSA's Office of Civil Rights & Liberties agreed to conduct TSA employee training with special emphasis on hair pat downs for African Americans which was to be done throughout the United States. TSA also committed to monitor all of its airports to assess whether a discriminatory impact may be occurring at all TSA locations.

57. Despite these commitments, TSA has:

   a) failed to train, or adequately train, all its TSA agents in hair pat downs and has failed to ensure that its screening are race neutral;
   b) failed to adequately update or change training provided by the Multicultural Branch (MB) related to hair pat downs and unreasonable search and seizures as MB administers Federal Civil rights, liberties, regulations and policies per TSA Management Directives, to LAX airport, Minneapolis Airport, and all other airports throughout the country;
   c) Failed to update, or adequately update, its training related to TSA's office of Training and Workforce Engagement pertaining to discrimination, pat-downs and detention;
   d) failed to update, or adequately update, monitor TSA sites for consistent implementation of DHA and TSA policies, including, but not limited to hair pat-down complaints filed by African Americans and unlawful arrest and detentions of African Americans;
   e) Failed to adequately assess, evaluate, and analyze information pertaining to whether a discriminatory impact may have been occurring at TSA locations as it pertains to hair pat downs and detentions of African Americans.

58. Despite the Malaika Singleton incident and ACLU agreement, unlawful and unwarranted hair pat downs and arrest and detentions of African Americans continue to this date.[2]

---

[2] https://hellobeautiful.com/2933974/helloworld-do-black-women-unfairly-get-their-hair-patted-down-at-the-airport/

59. An April 24, 2018 Cosmopolitan article examined the incidents of TSA searching black women's hair, and determined that it was still being performed without safety as being the basis asserted.[3]

60. In March 15, 2019, ProPublica indicated that African Americans continue to be singled out and complain about the pat downs which are not being performed on non-African Americans.

61. Despite the agreement in 2015, it does not appear that TSA officials have received adequate training directing them to limit their search authority to detecting weapons or explosives.

62. Absent declaratory and injunctive relief from this Court, Ms. Scruggs, as well as other African Americans, will again be subjected to unconstitutional searches and seizures by TSA, or will have to change how they wear their hair in order to avoid being subject to such hair searches. The threat of future harm and unreasonable searches is continuous since Plaintiff will fly again, and if she does not, it is because of the intrusive searches she is subject to.

## COUNT I
## VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
## UNREASONABLE SEARCH AND SEIZURE
## (TSA and United States of America)

63. Ms. Scruggs re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

64. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.

65. TSA, through its officials arrested and detained Ms. Scruggs for no articulable facts connecting Ms. Scruggs to criminal activity or providing reasonable suspicion or probable cause.

---

[3] https://www.cosmopolitan.com/lifestyle/a18666534/tsa-black-women-hair-searches/

66. Defendant acted under color of law and in the performance of their official duties under federal, state, county, or municipal laws, ordinances, or regulations in arresting and detaining Ms. Scruggs.

67. Defendant's conduct violated Ms. Scruggs's clearly established constitutional right to be free from unreasonable searches and seizures as was recognized by the TSA in 2015 through its agreement with the ACLU.

68. The search was not reasonable since the scan and chemical test were negative and her head region did not set off any alarm. Hair pat downs are supposed to be done if something in the head area triggers an alarm. It is not supposed be done in a way that targets African Americans. Unfortunately, TSA targets African Americans for these type of hair pat downs, because of their race and natural hair.

69. The hair pat down is unreasonably intrusive and an invasion of privacy, in that TSA officers put their fingers and hands through her hair. Going through a person's hair is personal and intrusive, and there have also been instances, when TSA officials have required African American passengers to undo their hair styles, with no reasonable reason provided.

70. The detention was also unreasonable as it lasted approximately 30-45 minutes. The detention was not brief or inconvenient.

71. The full body search was also unreasonable and unnecessary, especially since the hair pat down, the scan and the chemical swab were negative.

72. The officials failed to articulate any reason as to her detention, search or her seizure.

73. Defendants acted with reckless indifference or callous disregard for Ms. Scruggs' right to be free from unreasonable searches and seizures, thus entitling her to punitive damages.

74. The search, detention and interrogation of Plaintiff by Defendants constituted an unreasonable search and seizure under the Fourth Amendment to the United States Constitution.

75. The search, detention and interrogation of Plaintiff by Defendant's agents was conducted pursuant to a practice, or custom that violates the Fourth Amendment to the United States Constitution.

## COUNT II
## 5 U.S.C. §§ 702, 706 – UNLAWFUL EXERCISE OF AGENCY AUTHORITY

76. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein

77. The detention and interrogation of Plaintiff by Defendant's officials exceeded Defendant's statutory authority to protect civil aviation by screening passengers for weapons and explosives.

78. The detention and interrogation of Plaintiff by Defendant's officials was conducted pursuant to a practice, or custom that exceed Defendant's statutory authority to protect civil aviation by screening passengers for weapons and explosives.

## COUNT III
## VIOLATION OF THE FIFTH AMENDMENT
## EQUAL PROTECTION
## (TSA, UNITED STATE OF AMERICA)

79. Ms. Scruggs re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

80. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which is applicable to the federal government under the Fifth Amendment, guarantees all persons equal protection of the laws.

81. TSA, through its officials, searched, arrested, and detained Ms. Scruggs because of her ethnicity, race, or national origin based on her appearance, including how she, as an African American, wears her hair.

82. TSA intentionally and deliberately targets African Americans, including Plaintiff, for these type of hair pat downs.

83. Defendants acted intentionally and unlawfully in discriminating against Ms. Scruggs on account of her ethnicity, race, or national origin.

84. Defendants acted under color of law and in the performance of their official duties under federal, state, county, or municipal laws, ordinances, or regulations in searching, arresting, and detaining Ms. Scruggs.

85. Defendants' conduct violated Ms. Scruggs' clearly established constitutional right to equal protection of the laws of the United States.

86. Defendants acted with reckless indifference or callous disregard for Ms. Scruggs' right to equal protection of the laws, thus entitling her to punitive damages.

## COUNT VII
## CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT
### False Arrest and False Imprisonment
### (United States of America)

87. Ms. Scruggs re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

88. At all times relevant to the complaint, the TSA officials, were employees of the United States, acting in the scope of their employment through their own actions and their directions to employees and agents, under circumstances that would render the United States, if a private person, liable for the damages that their actions caused Ms. Scruggs under Illinois law.

89. The TSA officials, individually and as agents of the United States of America, intentionally and unlawfully deprived Ms. Scruggs of her liberty by arresting and detaining her for an extended period of time with no articulable facts connecting Ms. Scruggs to criminal activity or providing reasonable suspicion or probable cause. These actions constitute the torts of false arrest and false imprisonment under Illinois law because defendants acted with the intention of confining Ms. Scruggs; the officials' actions directly resulted in such confinement; and Ms. Scruggs was conscious of her confinement.

90. Under the Federal Tort Claims Act, the United States of America is liable for these actions pursuant to 28 U.S.C. §§ 1346(b) and 2674.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a jury trial and respectfully requests that the Court:

a. Declare that the actions of TSA described in this Complaint violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and exceeded statutory authority;

b. Permanently enjoin TSA and the United States of American her officers, agents, servants, employees, and all persons in active concert or participation with her who receive actual notice of the injunction, from authorizing or conducting *suspicionless* hair pat downs and pre-flight detentions and seizures of passengers or their belongings;

c. Declare that Ms. Scruggs' constitutional rights to equal protection of the law under the Fifth Amendment have been violated;

d. Declare that Ms. Scruggs' constitutional rights to be free of unreasonable searches and seizures under the Fourth Amendment have been violated;

e. Award Ms. Scruggs compensatory damages for the injury and distress she

endured and continues to endure as a result of Defendants' unlawful conduct in excess of $50,000;

    f.    Award Ms. Scruggs punitive damages against the individual Defendants for their unlawful conduct;

    g.    Award Ms. Scruggs reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

    h.    Grant any other relief the Court deems appropriate.

Dated: April 18, 2019

        Respectfully submitted,

*/s// Michael Rothmann*
LAW OFFICE OF MARTIN L. GLINK
1655 N Arlington Heights Rd., Ste 100E
Arlington Heights, IL 60004
847-394-4900
847-394-1521 (fax)
mrothmann@glinklaw.com

*/s// Deidre Baumann*
Baumann & Shuldiner
20 S. Clark St., Ste 500
Chicago, IL 60603-1832
312-558-3119
312-372-7076 (fax)
baumannesq@gmail.com

Attorneys for Plaintiff