# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KAREN SCRUGGS,

       Plaintiff,

       v.

KEVIN MCALEENAN[1] and THE UNITED
STATES OF AMERICA,

       Defendants.

No. 18 CV 2109

Judge Manish S. Shah

## ORDER

Defendants' motion to dismiss [42] is granted. Count I is dismissed with prejudice. Counts II and III are dismissed without prejudice for lack of jurisdiction.

## STATEMENT

This is plaintiff Karen Scruggs's second attempt to plead her claims. In Scruggs's original complaint, she alleged that—without any sign that she was a security risk—TSA agents at O'Hare International Airport subjected her to a hair pat-down and chemical scan, took her aside for a full body search, and detained her. [1] ¶¶ 1, 4, 6–8, 10, 19.[2] She asserted four claims—one under the Administrative Procedure Act, another under the Federal Tort Claims Act, and two constitutional claims (for violations of her Fourth and Fifth Amendment rights) under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). [1]. The government moved to dismiss the entire complaint, [13], and I granted the motion in part, dismissing all but the FTCA claim. [37]. Scruggs amended her complaint and repleaded all four claims. [39]. The gist of the allegations is the same, with a few more details.

The government has answered the FTCA claim, [41], but moves to dismiss the others, [42], arguing that Scruggs has not fixed the defects that caused dismissal the first time around. The government's motion is under Rule 12(b)(1) and Rule 12(b)(6).

---

[1] The amended complaint names former DHS Secretary Kirstjen Nielsen as a defendant, but Kevin McAleenan, the current Acting DHS Secretary, is the proper defendant. *See* Fed. R. Civ. P. 25(d).

[2] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The amended complaint is [39].

To survive the former, the complaint must plausibly allege standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). To survive the latter, the complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving both motions, I consider only the pleadings, documents incorporated by reference in the pleadings, and matters subject to judicial notice, accepting the well-pleaded facts as true and drawing all reasonable inferences in Scruggs's favor. *Tobey v. Chibucos*, 890 F.3d 634, 639, 648 (7th Cir. 2018); *Silha*, 807 F.3d at 173.

*APA Claim*

The problem with Scruggs's APA claim in the original complaint was that she did not allege a "final agency action." [37] at 3–5. As I explained before, an "agency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. §§ 701(b)(2), 551(13), and to be final, the action must "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up).

Scruggs has still not identified a final agency action.[3] She claims that in order to do so, "discovery will be necessary." [48] at 10. Plaintiffs don't get access to discovery without first stating a viable legal claim, and a final agency action is a necessary component of Scruggs's APA claim. *See Dhakal v. Sessions*, 895 F.3d 532, 541 (7th Cir. 2018) (affirming dismissal of APA claim where agency decision was not a final agency action). And to the extent Scruggs means to challenge the TSA's Checkpoint Screening Operating Procedures, that claim would have to brought in the court of appeals. *See* 49 U.S.C. § 46110 (court of appeals "has exclusive jurisdiction to affirm, amend, modify, or set aside" a TSA "order"); *Roberts v. Napolitano*, 798 F.Supp.2d 7, 10 (D.D.C. 2011), *aff'd*, 463 Fed.App'x 4 (D.C. Cir. 2012) (finding that the Screening Checkpoint SOP is an "order" under § 46110).

---

[3] In fact, in an apparent maneuver to get around the fact that if she does identify a final agency action, this court will likely be without jurisdiction, *see* [37] at 4 (describing the interaction between the APA's "final agency action" requirement and 49 U.S.C. § 46110, which grants exclusive jurisdiction over review of a TSA "order" to the court of appeals), Scruggs herself repeatedly doubts that her claims involve a final agency action. *See, e.g.*, [48] at 10 ("TSA's hair pat downs and arrest which may not, or may be rooted in a TSA 'policy, practice, or custom' …"), 10–11 ("[I]t cannot conclusively be said that the claims are rooted in a Final Agency Order."), 11 ("[T]here might not be a final agency order as it relates to the wrongful conduct.").

Because Scruggs has twice attempted and failed to state a viable APA claim, it is dismissed with prejudice. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019).

*Constitutional Claims*

I dismissed Scruggs's first attempt at pleading constitutional claims because she did not adequately allege standing for prospective equitable relief, damages were not available to her under *Bivens*, and she did not state viable claims on the merits.

With her *Bivens* claims dismissed, Scruggs now tries to pursue damages for the alleged constitutional violations by invoking the FTCA. But "[c]onstitutional tort claims are not cognizable under the FTCA." *Smith v. United States*, 678 Fed.App'x 403, 406 (7th Cir. 2017) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994)).

Scruggs has not sufficiently alleged standing to pursue equitable relief. "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (citation omitted). To establish a "real and immediate" threat, Scruggs must fly again, which she didn't allege in the original complaint. Now, Scruggs alleges that she "enjoys going to different parts of the Country at least once a year," [39] ¶ 20, and I assume she means to say that she flies there. But the amended complaint's allegations do not demonstrate a realistic threat that when Scruggs flies again, TSA officials will violate her rights in a similar way. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (standing for prospective equitable relief requires "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way").

Scruggs's argument in support of her standing cites one case, in which the court found no standing but noted that "[i]f Simic were claiming a constitutional right to drive while using her cell phone, our standing analysis would be different." *Simic v. City of Chicago*, 851 F.3d 734, 739 (7th Cir. 2017). This language from *Simic* refers to the slightly different analysis that applies to pre-enforcement constitutional challenges to statutes. Such claims necessarily involve an implied threat of prosecution. But that's not applicable here—Scruggs points to no such concrete, non-conjectural threat. The rest of her argument consists of assertions unsupported by legal authority. For example, she says, without citation, that "[i]f the TSA does have a policy, procedure, Order or these are widespread occurrences negatively affecting African-Americans because of her race, then Ms. Scruggs has the right to challenge it." [48] at 18. It is not so because she says it—Scruggs must point to legal support. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845

F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

I agree that Scruggs would have standing for equitable relief if the alleged conduct was the result of a TSA policy or order. *See Lyons*, 461 U.S. at 105–06. But the complaint does not plausibly allege that TSA has a policy of conducting the kind of search she was subjected to, other than a conclusory allegation that "[t]he treatment Ms. Scruggs received reflects TSA policy and/or practice." [39] ¶ 52. But nowhere does she allege facts demonstrating the existence of a policy of unreasonably detaining people or conducting discriminatory hair pat-downs. To the contrary, the complaint alleges that the TSA says that "a hair pat down will occur if the advanced imaging technology machine is triggered by a passenger's head region." [39] ¶ 25. That suggests what allegedly happened to Scruggs was contrary to TSA's stated policy. And though the amended complaint contains allegations that hair pat-downs have happened to other women, *see, e.g.*, [39] ¶¶ 53–54, the other experiences are not in sufficient numbers to suggest a policy or create a "real and immediate" threat that it will happen to Scruggs again. Contrary to Scruggs's assertion in her brief that African American air travelers "will be subject to these searches each time they fly," [48] at 18, the complaint's allegations suggest that Scruggs has flown and not suffered the same search and detention. *See* [39] ¶ 22 ("Each time she has flown since, she has had to make a concerted decision how to wear her hair so to avoid having to undergo a hair pat down or be singled out for more intrusive searches."). Changing her hair and suffering from anxiety may be a concrete injury, but the issue here is whether Scruggs has demonstrated a concrete risk that she will be wronged in the same way. That Scruggs has avoided the searches does not establish that she would be searched with a different hairstyle; instead, it demonstrates that the risk is conjectural.

Because Scruggs does not have standing to seek prospective injunctive relief, her constitutional claims are dismissed without prejudice for lack of jurisdiction. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 18-2377, 2019 WL 3822156, at *5 (7th Cir. Aug. 15, 2019).[4] Scruggs has had two opportunities to allege

---

[4] Without a viable case or controversy, federal courts cannot reach the merits of a constitutional claim. I nevertheless, in the interests of completeness based on the parties' briefs, note that even if Scruggs had standing to pursue her constitutional claims, they would both fail on the merits. Airport screenings are administrative searches that must be reasonable but don't have to be justified by individualized suspicion. *See Illinois v. Lidster*, 540 U.S. 419, 426–27 (2004); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 10 (D.C. Cir. 2011) (airport screenings are administrative searches that don't require individualized suspicion). Scruggs's amended complaint adds allegations that she was detained for 30 to 45 minutes and that the full-body search included a pat-down between her legs, under her bra, and through her hair. [39] ¶¶ 10, 50. Even with these new additions, the search and detention described in the amended complaint is not unreasonable in the context of the important interests served by airport screenings. Scruggs cites to no case law suggesting otherwise, and the racial bias at issue is an equal-protection issue, not a Fourth Amendment one. *Cf. Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he constitutional

standing, and there is no reason to delay adjudication of the FTCA claim with yet another round of pleadings. I decline to give Scruggs leave to amend Counts II and III.

ENTER:

Manish S. Shah
United States District Judge

Date: August 27, 2019

---

basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). To state an equal-protection claim, Scruggs must allege facts showing that defendants acted with a discriminatory purpose. *See Parker v. Lyons*, 757 F.3d 701, 707 (7th Cir. 2014); *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 951 (7th Cir. 2002). "[A]n assertion of disparate racial impact does not state an equal-protection claim." *Parker*, 757 F.3d at 707. Other than conclusory allegations, *see Iqbal*, 556 U.S. at 680–81 (an allegation of conduct taken "solely on account of [plaintiff's] religion, race, and/or national origin" is "not entitled to be assumed true"), the amended complaint does not raise an inference that Scruggs was detained or searched because of her race. There are allegations that other African American women have been subjected to hair pat-downs while other racial groups have not. But this does not suggest that defendants had a discriminatory purpose in conducting the searches, as opposed to conducting a practice meant to be racially neutral but in practice disparately affected African American women.